**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANTOINE DAMON ASHWORTH,

       Petitioner,                   CASE NO. 2:09-CV-12801

v.                                  HONORABLE ARTHUR J. TARNOW

MITCH PERRY,

       Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

      Antoine Damon Ashworth, ("Petitioner"), confined at the Newberry Correctional Facility in Newberry, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for first-degree home invasion, M.C.L.A. 750.110a(2); felonious assault, M.C.L.A. 750.82; felon in posssession of a firearm, M.C.L.A. 750.224f; carrying a dangerous weapon with unlawful intent, M.C.L.A. 750.226; felony-firearm, M.C.L.A. 750.227b; and being an habitual offender, M.C.L.A. 769.11. [1] For the reasons stated below, the petition for writ of habeas corpus is DENIED.

---

[1]   When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Michigan Reformatory, but has since been transferred to the Newberry Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the Court substitutes Warden Mitch Perry in the caption.

## I. Background

Petitioner was convicted of the above offenses on May 24, 2006, following a jury trial in the Saginaw County Circuit Court.  On August 16, 2006, petitioner was sentenced as a third habitual offender to concurrent sentences of fifty seven months to eight years in prison on the felonious assault conviction, fifty seven months to ten years on the felon in possession conviction, forty three months to ten years on the carrying a dangerous weapon conviction, which were to be served consecutively to a sentence of twenty to forty years for the home invasion conviction and another consecutive two year sentence for the felony-firearm conviction. [2]

The facts leading to petitioner's conviction are recited verbatim from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from an incident in April 2002, in which a man appeared at the house of Diana Barajas and repeatedly banged on the front door.  When Barajas answered the door, the man then insisted on seeing proof of insurance for Barajas's husband's truck.  The man was carrying a notepad, flashed a badge, and was dressed like a police officer or other official.  After Barajas told the man that her husband was not home and that she could not obtain the proof of insurance, the man entered her home and pulled out a gun.  The man "dragged" Barajas by the arm through her home as he checked the rooms.  Barajas's mother, Maria Faith, was able to escape from the house with Barajas's infant child, and Barajas was also able to eventually get out of the house.  The man thereafter left the house and drove

---

[2]  Petitioner was originally tried for these offenses in August of 2003, but the first trial ended in a deadlocked jury.  Petitioner was retried a month later and found guilty. The Michigan Court of Appeals reversed petitioner's convictions and remanded the matter for a new trial, on the ground that the prosecutor improperly questioned petitioner about his pre and post-arrest silence. *People v. Ashworth,* No. 251881 (Mich.Ct.App. May 5, 2005).  On re-trial, petitioner was again convicted of these offenses.

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

off in a blue car.  A passing motorist, Kelly Henderson, and a neighbor, Robert Killmer, offered assistance.  Henderson and Killmer also saw the suspect drive off in the car, and Killmer obtained the license plate number of the car, which was found to be registered to defendant's girlfriend.

*People v. Ashworth,* No. 273817, * 1 (Mich.Ct.App. April 17, 2008).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 482 Mich. 1186, 758

N.W.2d 561 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Kelly Henderson was the only witness to identify petitioner at the lineup. At trial, she revealed for the first time that she was personally acquainted with petitioner.  Petitioner requested permission to recall Ms. Henderson to cross-examine her regarding her familiarity with him and the possibility of a tainted identification.  The trial court violated petitioner's right to confrontation where it refused to allow petitioner to recall this witness.  Petitioner is entitled to a new trial.

II. The prosecutor committed misconduct where he elicited speculation from Detective Courtney to the effect that petitioner stored guns under his trailer. The prosecutor committed misconduct where he asked petitioner about supposed guns under the trailer, and where he identified Jennifer Howell as petitioner's parole officer.  The prosecutor committed misconduct by asking petitioner's girlfriend if petitioner was a part of the "Burt Street Group." Petitioner was denied a fair trial. The convictions should be reversed.

III.  Trial counsel failed to object to repeated prosecutorial misconduct. Counsel failed to conduct competent cross-examination of a key prosecution witness.  Counsel failed to call a witness in support of the defense theory of the case.  Petitioner is entitled to a new trial. Alternatively, petitioner is entitled to a *Ginther* hearing in order to develop the issue.

IV.  After the trial, petitioner obtained an affidavit swearing that Charles Aldridge confessed to the crime.  Petitioner also obtained photographs of Charles Aldridge revealing that Mr. Aldridge was indeed bald. A new trial is warranted due to newly discovered evidence.

V.  The trial court erred in the scoring of Offense Variable (OV) 4 (psychological injury to a victim), OV 8 (victim asportation or captivity), and

3

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

OV 10 (exploitation of a vulnerable victim). Petitioner is entitled to a re-sentencing within the correct guidelines.

VI. The cumulative effect of errors in this trial denied petitioner his right to a fair trial. The convictions should be reversed and the matter remanded for new trial.

## II. Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

4

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Recently, in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the United States

Supreme Court stated: "A state court's determination that a claim lacks merit precludes

federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004).  The Court further stated:

> Section 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not a substitute
> for ordinary error correction through appeal.  As a condition for obtaining
> habeas corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court was so
> lacking in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.
>
> *Harrington*, at 786–87 (internal citation omitted).

A federal habeas court must presume the correctness of state court factual

determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption

only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th

Cir. 1998).

5

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

### III. Discussion

**A.**     **Kelly Henderson was the only witness to identify petitioner at the lineup.  At trial, she revealed for the first time that she was personally acquainted with petitioner.  Petitioner requested permission to recall Ms. Henderson to cross-examine her regarding her familiarity with him and the possibility of a tainted identification. The trial court violated petitioner's right to confrontation where it refused to allow petitioner to recall this witness.  Petitioner is entitled to a new trial.**

Petitioner first alleges that his Sixth Amendment right to confrontation was violated when the trial judge refused to permit him to recall Kelly Henderson as a witness, after she had revealed during cross-examination by petitioner's counsel that she had known petitioner when he was a resident at a juvenile detention center where Henderson had worked from 1982 to 1991, but "did not know him in the lineup."  At the conclusion of the first day of trial, petitioner informed the judge that he remembered Henderson from the past and explained that he had once gotten into trouble for reporting her involvement in an extramarital affair.  Petitioner advised the judge that he was concerned that Henderson had identified him in the earlier lineup because she had seen his name on police paperwork prior to the lineup.  Petitioner wanted to recall Henderson for further cross-examination on this subject.  When the trial judge asked defense counsel why he had not questioned Henderson about this during cross-examination, counsel explained that petitioner had not previously recognized Henderson and that counsel had no prior information that Henderson knew petitioner. The judge stated that he would take the matter under advisement and would decide on the next day of trial what to do.

6

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Before trial resumed, Detective Cheryl Courtney investigated petitioner's allegations.  On the next day of trial, the judge received testimony from Detective Courtney outside of the jury's presence.  According to Detective Courtney, Henderson indicated that she had been involved in an extramarital relationship with another employee at the Saginaw County Juvenile Detention Center in the mid 1980s. Henderson was separated from her husband at the time and the relationship was not a secret to other staff and detainees at the detention center. Detective Courtney spoke to the person whom Henderson had the extramarital affair with.  This man denied that the relationship caused any problems with management at the detention center. Henderson informed Detective Courtney that her identification of petitioner at the lineup was based solely on what she observed on the date of the crime.  Henderson explained that because of the approximately 20 year lapse of time, petitioner's appearance had changed since he was a juvenile and she did not recognize him at the lineup as someone she had previously known and it was not until later that she recognized petitioner's name.  Following this testimony, the trial court denied petitioner's request to recall Henderson.

The Michigan Court of Appeals concluded that petitioner had not been denied his right to confrontation because petitioner had been given the opportunity to confront and cross-examine Henderson.  The Michigan Court of Appeals further noted that when Henderson disclosed on cross-examination that she knew petitioner being a resident at juvenile detention center, petitioner was not restricted in his ability to cross-examine Henderson on this subject. *Ashworth,* Slip. Op. at * 3.  The Michigan

7

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Court of Appeals further ruled that the trial judge did not abuse his discretion in denying petitioner's request to recall Henderson, because there was nothing from Detective Courtney's testimony at the separate record to support petitioner's contention that Henderson may have identified him at the pretrial lineup because of her prior acquaintance with him or that she was biased against him because petitioner had disclosed her extramarital affair. *Id.*

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, that the defendant might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988)(internal quotations omitted).  The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing limits on a defense counsel's inquiry into potential bias of a prosecution witness; to the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, a witness' safety, or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  Where it is merely the extent of cross-examination into a certain area that is limited, the trial judge retains much wider latitude of discretion, although that discretion may still be abused. *Dorsey v. Parke*, 872 F. 2d 163, 166 (6th Cir. 1989).  Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Id.*

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Matters which relate to the admission of evidence and the recalling and cross-examining of witnesses "are peculiarly within the province of the trial judge[.]", who "has a wide latitude and discretion" regarding these issues. *Buder v. Bell,* 306 F. 2d 71, 75-76 (6th Cir. 1962). Although a trial judge's errors regarding these issues may be the subject of an appeal, "[R]arely would such errors warrant a collateral attack on a judgment of conviction as being a denial of due process of law." *Id.*

The trial judge's refusal to permit petitioner to recall Kelly Henderson to testify did not violate his right to confrontation because there has been no showing that petitioner's proposed areas of inquiry would have yielded significant impeachment evidence against Henderson's trial testimony. *See Stewart v. Wolfenbarger,* 468 F.3d 338, 348 (6th Cir. 2006). Indeed, further inquiry by defense counsel into Henderson's prior acquaintance with petitioner would have only bolstered her identification of him as the perpetrator.

Moreover, even if Henderson's prior relationship with petitioner was significant impeachment evidence, this evidence was brought before the jury. Henderson testified that she had known petitioner when he was a resident at the juvenile detention center in the 1980's. Petitioner's counsel later obtained an admission from Detective Courtney that Henderson never told her that she recognized the name of Antoine Ashworth either at the pre-trial lineup or at the preliminary examination. (Tr. 5/23/2006, p. 82). In closing argument, defense counsel argued that Henderson's identification was "deceptive" because although she claimed that she knew petitioner from a previous contact at the juvenile detention center, she never brought this to the attention

9

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

of the police prior to the preliminary examination, even though she should have known petitioner's name from the subpoenas issued for the preliminary examination. (Tr. 5/24/2006, p. 147). Because the information concerning Henderson's prior contact with petitioner was already before the jury, the trial judge's refusal to allow petitioner to recall her to the stand was not an unreasonable application of clearly established law. *Stewart,* 468 F. 3d at 349.

Moreover, assuming that the trial court erred in preventing petitioner from recalling Henderson, the error was harmless. A violation of the Confrontation Clause can be harmless error. *Van Arsdall*, 475 U.S. at 684. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In the present case, three other witnesses positively identified petitioner at trial. The motor vehicle used by the suspect belonged to petitioner's girlfriend. In light of this additional evidence, the trial judge's refusal to permit the recall of Ms. Henderson was harmless error at most. Petitioner is not entitled to habeas relief on his first claim.

10

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

**B.  The prosecutor committed misconduct where he elicited speculation from Detective Courtney to the effect that petitioner stored guns under his trailer. The prosecutor committed misconduct where he asked petitioner about supposed guns under the trailer, and where he identified Jennifer Howell as petitioner's parole officer.  The prosecutor committed misconduct by asking petitioner's girlfriend if petitioner was a part of the "Burt Street Group."  Petitioner was denied a fair trial. The convictions should be reversed.**

Petitioner next claims that he was deprived of a fair trial because of prosecutorial misconduct. [3]

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974).  The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982).  The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th

_____

[3]  Respondent contends that the prosecutorial misconduct claims are procedurally defaulted, because counsel failed to object to them.  Petitioner contends that counsel was ineffective for failing to object to these instances of misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801 Cir.1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).

Petitioner first contends that the prosecutor improperly interjected irrelevant and speculative evidence when he questioned Detective Courtney about whether she found a gun hidden under the skirt of petitioner's mobile home. Detective Courtney denied finding a gun, but indicated that cobwebs had been disturbed in an area where a gun could have been stored. In rejecting this claim, the Michigan Court of Appeals ruled that even if the prosecutor's line of questioning was improper, petitioner's substantial rights were not affected because the detective admitted that no gun was found. *Ashworth,* Slip. Op. at * 3-4.

The Sixth Circuit has noted that there are no Supreme Court cases which support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 Fed. Appx. 591, 594 (6th Cir. 2005). Therefore, the fact that the prosecutor attempted to elicit allegedly irrelevant evidence concerning Detective Courtney's search for a firearm at petitioner's house would not entitle him to habeas relief. *Id.*

12

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Moreover, as the Michigan Court of Appeals noted, Detective Courtney admitted that she did not find a weapon at petitioner's house.  Detective Courtney's response to the prosecutor's question about whether a firearm had been found at petitioner's house was neither misleading or prejudicial.  Accordingly, the prosecutor did not engage in prosecutorial misconduct by asking this question. *See U.S. v. Blood*, 435 F. 3d 612, 628 (6th Cir. 2006).

Petitioner next contends that it was improper for the prosecutor to question Jennifer Howell, petitioner's parole officer, about the fact that she worked for the Department of Corrections and supervised petitioner while he was on parole, thus revealing that petitioner had previously been in prison.  In rejecting this claim, the Michigan Court of Appeals noted that petitioner's status as a convicted felon was relevant to the felon in possession of a firearm charge, because a necessary element of that charge was that the defendant had previously been convicted of a felony. *Ashworth,* Slip. Op. at * 4.  The Michigan Court of Appeals further noted that petitioner admitted that he had two prior convictions for armed robbery, thus the jury was aware of petitioner's criminal history.  The Michigan Court of Appeals finally concluded that Howell was a relevant witness because she took a statement from petitioner in which he informed Howell that he had loaned his car to other possible suspects, but did not mention Charles Aldridge. *Id.*

A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle,* 457 F. 3d at 518.  In the present case, petitioner's status as a convicted felon was relevant to the felon in possession of a firearm charge, therefore,

13

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

the prosecutor's questions about petitioner's prior convictions or parole status did not

constitute misconduct. [4]  Moreover, in light of the fact that petitioner admitted having

two prior armed robbery convictions, any evidence about petitioner's parole status was

harmless error at most.  In deciding whether prosecutorial misconduct mandates that

habeas relief be granted, a federal court must apply the harmless error standard.

*Pritchett v. Pitcher*, 117 F. 3d at 964.  Where a prosecutor's conduct does not have a

substantial or injurious effect on the outcome of the trial, habeas relief should be

denied. *See Maurino v. Johnson*, 210 F. 3d 638, 644 (6th Cir. 2000).  Because

petitioner admitteed to having a prior criminal record, any impropriety in calling Howell

as a witness was harmless error at most.

        Petitioner lastly claims that the prosecutor improperly asked his girlfriend about

his membership in a street gang.  In rejecting this claim, the Michigan Court of Appeals

concluded that there was no merit to petitioner's claim, because the prosecutor only

asked petitioner's girlfriend if he associated with a particular group of men from the

same neighborhood, but that there were no references to gangs or gang membership.

The only testimony elicited by the prosecutor was that petitioner had loaned his vehicle

to two of his longtime friends, and that petitioner and these friends grew up together in

the same neighborhood. *Ashworth,* Slip. Op. at * 4.

_____

        [4]  The elements of felon in possession of a firearm in Michigan are: (1) that the
defendant was convicted of a felony, (2) that the defendant possessed a firearm, and
(3) that at the time of possession less than three or five years, depending on the
underlying felony, has passed since the defendant had completed his term of
incarceration, satisfied all conditions of probation and parole, and paid all fines. *See
Parker v. Renico*, 506 F. 3d 444, 448 (6th Cir. 2007).

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

In the present case, even if the prosecutor's questions to petitioner's girlfriend could have been construed as an attempt to introduce evidence that petitioner was in a gang, petitioner would not be entitled to habeas relief because these questions were isolated. *See Toler v. McGinnis,* 23 Fed.Appx. 259, 269-70 (6th Cir. 2001). Petitioner is not entitled to habeas relief on his second claim.

**C.      Trial counsel failed to object to repeated prosecutorial misconduct. Counsel failed to conduct competent cross-examination of a key prosecution witness. Counsel failed to call a witness in support of the defense theory of the case. Petitioner is entitled to a new trial. Alternatively, petitioner is entitled to a *Ginther* hearing in order to develop the issue.**

Petitioner next contends that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability

15

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting Richter, 131 S. Ct. at 792).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

Petitioner first contends that counsel was ineffective for failing to object to the prosecutorial misconduct that he complained of in Claim # 2, *supra.*  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's questions did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to some of these questions. *Slagle,* 457 F. 3d at 528.  Because the prosecutor's conduct was either not improper or harmless error, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

16

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Petitioner next contends that trial counsel was ineffective for failing to cross-examine Kelly Henderson about her prior contact with and knowledge of petitioner, claiming that effective cross-examination on this subject would have diminished the value of her pretrial identification.

Petitioner's ineffective assistance of counsel claim fails for several reasons. First, counsel was not deficient in failing to introduce any further evidence that Henderson had previously known petitioner, because such evidence would have actually undercut defense counsel's misidentification defense, in that evidence of Henderson's prior contact with petitioner would only have bolstered her identification of him. *See e.g. Thao v. Conover*, 159 Fed. Appx. 842, 846 (10th Cir. 2005).  Petitioner's ineffective assistance of counsel claim thus fails, because even if counsel was deficient in failing to further cross-examine Henderson, petitioner has failed to demonstrate any reasonable probability that the cross-examination of this witness by defense counsel would have affected the result of the proceeding. *Moss v. Hofbauer,* 286 F. 3d 851, 866 (6th Cir. 2002).

Moreover, as discussed when addressing petitioner's Confrontation Clause claim, *supra,* counsel adequately impeached Henderson's credibility, by bringing out the fact that although she claimed to have known petitioner from the juvenile detention center, she never informed Detective Courtney prior to trial of her prior acquaintance with him, even though she was aware from the subpoena for the preliminary examination as to petitioner's name.  Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at

17

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

trial." *Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir. 2009)(quoting *Brown v. Smith*, 551

F. 3d 424, 433-34 (6th Cir. 2008)).  Because Henderson's credibility already been

impeached, petitioner was not prejudiced by counsel's failure to impeach Henderson

with cumulative impeachment evidence. *Id.*

Petitioner finally contends that counsel was ineffective for failing to call his first

attorney to testify that petitioner had named another individual, Charles Aldridge, as a

suspect early in the case.  In rejecting this claim, the Michigan Court of Appeals noted

that although petitioner raised this issue in his motion for a new trial, he did not provide

an offer of proof, such as an affidavit from his first counsel.  Therefore, petitioner failed

to provide factual support for his claim that his first counsel could have provided

favorable testimony. *Ashworth,* Slip. Op. at * 5.

Conclusory allegations of ineffective assistance of counsel, without any

evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178

F.3d 759, 771 (6th Cir. 1998); *See also Reedus v. Stegall,* 197 F. Supp. 2d 767, 782

(E.D. Mich. 2001).  By failing to present any evidence to the state courts in support of

this ineffective assistance of counsel claim, petitioner is not entitled to an evidentiary

hearing on his claim that counsel was ineffective in failing to call Petitioner's first

counsel as a defense witness. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir.

2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner has offered, neither to the

Michigan courts nor to this Court, any evidence beyond his own assertions as to

whether his first counsel would have been able to testify and what the content of her

testimony would have been.  In the absence of such proof, petitioner is unable to

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

establish that he was prejudiced by counsel's failure to call Petitioner's first counsel to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).  Petitioner is not entitled to habeas relief on his third claim.

> **D.    After the trial, petitioner obtained an affidavit swearing that Charles Aldridge confessed to the crime.  Petitioner also obtained photographs of Charles Aldridge revealing that Mr. Aldridge was indeed bald. A new trial is warranted due to newly discovered evidence.**

In his fourth claim, petitioner claims that the trial judge erred in denying his motion for a new trial based upon an affidavit from Derrick Braddock, who averred that Charles Aldridge had confessed to him on the date of the offense that he committed the crimes of which petitioner was convicted.  Petitioner also submitted autopsy photographs of Aldridge showing him with a bald or closely-shaven head.

The Supreme Court's decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55.  Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim", *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context.  Petitioner is

19

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

therefore is not entitled to relief for his fourth claim under available Supreme Court

precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

**E.** **The trial court erred in the scoring of Offense Variable (OV) 4 (psychological injury to a victim), OV 8 (victim asportation or captivity), and OV 10 (exploitation of a vulnerable victim). Petitioner is entitled to a re-sentencing within the correct guidelines.**

Petitioner next contends that the trial court incorrectly scored several of the

offense variables of the Michigan Sentencing Guidelines.

Petitioner's claim that the state trial court incorrectly scored or calculated his

sentencing guidelines range under the Michigan Sentencing Guidelines is not a

cognizable claim for federal habeas review, because it is basically a state law claim.

*See Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also See Whitfield v.*

*Martin,* 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001).  "Petitioner has no state-created

interest in having the Michigan Sentencing Guidelines applied rigidly in determining his

sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich.

2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005).

"[I]n short, petitioner had no federal constitutional right to be sentenced within

Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F.

Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his

guideline score or in departing above his sentencing guidelines range alone would not

merit habeas relief. *Id.*  Petitioner is not entitled to habeas relief on his fifth claim.

20

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

**F.** **The cumulative effect of errors in this trial denied petitioner his right to a fair trial. The convictions should be reversed and the matter remanded for new trial.**

Petitioner lastly alleges that he is entitled to habeas relief because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; See also Dorchy v. Jones,* 320 F. Supp. 2d 564, 581 (E.D. Mich. 2004); *aff'd* 398 F. 3d 783 (6th Cir. 2005).

**G. A certificate of appealability.**

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [5] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are

---

[5] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Ashworth is not entitled to federal-habeas relief on the claims presented in his petition.

22

*Ashworth v. Perry,* U.S.D.C. No. 2:09-CV-12801

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**. (Dkt. # 1).

      **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.   IT IS FURTHER ORDERED that petitioner will be granted leave to appeal *in forma pauperis.*


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: January 18, 2012

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on January 18, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary

23